(C. D. 428)

Dr. John A. Millet *v.* United States

United States Customs Court, Third Division

(Decided January 29, 1941)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel G. McGrath*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover the duty assessed at various rates under the Tariff Act of 1930, plus 25 per centum ad valorem additional under section 489 for the reason that the collector rejected the antiquity claim as unauthentic on merchandise imported for sale and entered free of duty under paragraph 1811. It is claimed that the articles are free of duty either under paragraph 1632 or paragraph 1811 and that the collector should not have assessed the additional duty under section 489. The free list provisions herein involved read, insofar as pertinent, as follows:

PAR. 1632. Books, libraries, usual and reasonable furniture, and similar household effects of persons or families from foreign countries if actually used abroad by them not less than one year, and not intended for any other person or persons, nor for sale.

PAR. 1811. * * * artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced prior to the year 1830, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe. * * *

The protest contains the further claim that the assessment at the rate of 25 per centum ad valorem under section 489 is invalid because the provisions of that section are unconstitutional. It is claimed also that the collector erred in refusing to classify the merchandise under paragraph 1632 and in refusing to permit the importer to amend his entry papers.

An examination of the papers shows that the shipment was entered on a *pro forma* invoice containing over three hundred items. Some of the goods were entered free of duty as furniture or household effects under paragraph 1632 and some were entered free of duty as

artistic antiquities under paragraph 1811. No contention is made as to the merchandise entered under paragraph 1632, but the plaintiff claims that duty should not have been assessed on certain of the articles which were entered under paragraph 1811 and upon which the collector assessed duty because the appraiser reported that they were not artistic antiquities produced prior to the year 1830.

The portion of the invoice upon which the articles in issue are described contains at the top of the first page either the statement "antiques produced prior to 1830 and imported for sale" or "additional antiques imported for sale." There are one hundred and twenty-six different items to which the above statements refer. Some of the articles were classified by the collector as artistic antiquities produced prior to 1830 and were returned free of duty. Of the other items the plaintiff limited his claim to the following articles:

508 Antique mahogany circular table (old marks)

527 Jacobean gate-legged table in oak

552A Jacobean refectory table in oak

558 An antique oak piano stool—3′6″

1 Three mahogany and inlaid chairs of Heppelwhite design, carved and pierced oval backs, reeded front legs, loose seats

51 Georgian mahogany bow-front wardrobe with sliding trays and 3 drawers under, oval panelled doors

4 Chippendale mahogany frame settee with fretted legs, upholstered in cut velvet

49 Oval wall mirror in gilt ornamental frame with candle branches

44 An antique oak book table

67 Queen Anne carved walnut stool

80 Chippendale mahogany chest of drawers, fretted pilasters, shaped front, pierced brass handles

68 Antique walnut shaped-front chest of drawers, with stand

14 Chippendale mahogany silver-table

78 Mahogany and inlaid swing toilet glass

61A Mahogany frame swing toilet glass

50 Mahogany frame swing toilet glass

10 Antique mahogany work box

41A Carved oak chair with date 1704

69 William and Mary walnut table with drawer

59A Large mahogany wardrobe with drawers in centre and hanging compartments

66 Victorian marqueterie and walnut 4-poster bedstead, probably Dutch

601 Table mirror in Georgian mahogany frame with gilt slip
502 Antique Bergere chair in mahogany cane panels
537 Antique carved oak hall chair
541A Antique octagonal top table in satinwood spiral column
504 Circular folding top card-table on shaped frame

At the first hearing in the trial the importer, Dr. John A. P. Millet, testified that the articles in the importation were used as furnishings of a home which he owned in England and in which he was born; that to the best of his knowledge they had been in his home abroad or the home of his parents for 50 years; that at the time of importation he intended to use all of the twenty-six articles above described in his home in this country; and that he had not sold any of them.

The witness testified further that he had not seen the articles for 2 years prior to the importation and that he did not see the merchandise in this country until the goods were delivered to him after entry; that he had a real estate agency in England prepare a list of the effects and ship them to this country; that the agency had an appraisal department and a real estate department; that when the real estate agency sent the list of articles to him he knew the nature of the articles; that, after consulting with his customs broker, he put on the invoice the words "imported for sale" in connection with the list of antiques; that he did not hold himself out as an expert on antiques when he made out the invoice.

Thirteen of the articles in question were introduced in evidence and were marked as follows: Item 1, exhibit 6; item 49, exhibit 7; item 50, exhibit 8; item 10, exhibit 9; item 601, exhibit 10; item 537, exhibit 11; item 541A, exhibit 12; item 504, exhibit 13; item 508, exhibit 14; item 51, exhibit 15; item 68, exhibit 16; item 527, exhibit 17; and item 552, exhibit 18. A photograph of each of the above exhibits was introduced as illustrative exhibits A–6, B–7, C–8, D–9, E–10, F–11, G–12, H–13, I–14, J–15, K–16, L–17 and M–18.

Mr. Walter J. Mercer, the vice president of the customs brokerage firm which made the entry, was called in connection with the filing of the various documents required by the customs regulations for entry under paragraphs 1632 and 1811. When asked why he entered the merchandise as he did, he said:

When the shipment arrived it was covered by a bill of lading describing it as "household goods". Dr. Millet instructed our office to effect customs entry. A certain portion of the articles he wanted for his own personal use, and those which would be held to be antiques he wanted for sale to the American Art Galleries. Unfortunately, there is nothing in the tariff or the regulations to cover just such a situation, and we were both in a quandry. We took the matter up with the Entry Division at the Custom House, explaining here was a list of household effects; among them was a number of antiques which Dr. Millet was sure were antiques and some which weren't, but all of the articles which weren't antiques he intended to use in his own home, and those which were he intended to turn over to the American Art Galleries for sale.

I requested that we be permitted to make an appraisement entry. This was denied, because there was no provision to make such entry. It then became incumbent upon Dr. Millet to pick out the articles he believed antiques. We entered those under the provisions of paragraph 1811, and the balance under paragraph 1632. Under 1632 it is necessary to make a provisional affidavit that they were used abroad for a period of 1 year and not for sale. On the antiques, although there is nothing in the regulations and law, you must make a statement on the entry whether imported for sale or not for sale. We made the statement, in his behalf, that the antiques which we had claimed to be antiques on entry were imported for sale.

\* \* \* \* \* \* \*

By Mr. TOMPKINS.

Q. Mr. Mercer, did you, after filing entry papers, attempt to substitute an entry, claiming classification under paragraph 1632 as household effects on the 26 items which were entered as antiques but passed by the examiner as being produced after 1830?—A. I did.

Q. Approximately what date did you make that request?—A. Application was made to the collector to reclassify on 11/10/37.

Q. Did you at that time file with the collector of customs the required papers for classification duty free under paragraph 1632?—A. Not at that time, but a few days later.

The documents required by the regulations for free entry under paragraphs 1632 and 1811 were introduced in evidence and marked exhibits 1 to 5, respectively.

On cross-examination the witness testified that before he attempted to enter the twenty-six items here in dispute under paragraph 1632, the customs officers had examined the articles and rejected the antique claim made on the original entry.

Considerable evidence was introduced regarding the antiquity of the thirteen articles introduced in evidence as exhibits 6 to 18. The importers produced one expert, Mr. Leslie A. Hyam, and the Government three, Messrs. Herbert Frank Dawson, Henry A. Crum, and Albert Brengel, the last two being customs examiners in the office of the United States appraiser at New York. The evidence of Mr. Hyam that the following exhibits were artistic antiquities produced prior to the year 1830 was uncontradicted: Item 10 (exhibit 9); item 537 (exhibit 11); item 508 (exhibit 14); item 51 (exhibit 15); item 68 (exhibit 16); item 552 (exhibit 18). The weight of evidence indicates that the collector should not have rejected the antiquity claim as to the merchandise invoiced under said item numbers.

The testimony is conflicting as to the other exhibits which were introduced in evidence but the weight of evidence is to the effect that in the condition as imported, they were not produced prior to 1830. The witnesses all agreed, however, that the articles were artistic and the weight of evidence indicates that, with the exception of exhibits 7, 10, and 12, they existed in the form in which they were imported prior to 1830 but they contain major restorations and

repairs or additions which changed their status as artistic antiquities produced prior to 1830.

Exhibit 7 consists of an oval mirror having a frame covered with carved plaster, called "gesso work" by the witnesses. Witness Hyam testified that the mirror has the characteristics of the Adams period, which is an English design in vogue between 1765 to 1780, but that it had been regilded at a later date. Witness Dawson was of opinion that the mirror was of the Victorian period—1840 to 1850—and that it was not produced in the Adams period. He admitted, however, that the plaster on the mirror frame could have been produced in the Adams period but he had never seen carving of the type on this frame on mirrors of that period. Witness Crum testified that the carving on the exhibit is of the type of work done after 1830; that the wood frame was carved and then was covered with plaster to get a further refinement in the carving. Witness Brengel testified that the over-elaborate style of the design indicates that the article was produced around 1850.

Exhibit 10 consists of an oblong mirror in a frame. Witness Hyam testified that it belongs to the Queen Anne period in England—1740 to 1750—but that an easel has been added to it since 1830, making it a table mirror, and that a new back has been substituted. Witness Dawson testified that the mirror was a type produced prior to 1830 but there is evidence that hinges had been attached to the side of the frame and that it was originally used as a door of a bookcase or closet; that it is merely a fragment of another piece of furniture. Witness Crum testified that what existed prior to 1830 was a door of a piece of furniture and that the article did not exist merely as a mirror prior to 1830; that there is evidence that hinges had been attached to one side of the frame and a latch to the other; that the four corners of the frame indicate that it had been used as a door; that there was a complete new wooden back attached and also an easel; that the imported article contains the original glass and the original frame. Witness Brengel also testified that originally the mirror and frame formed a door of a piece of furniture; that it had been made into a table mirror by the attachment of an easel; that the places where the hinges were attached had been filled in by narrow strips of wood; that the imported article is fitted for a purpose entirely different from that for which it was used prior to 1830.

. Exhibit 12 consists of a table having a round top supported by a single spiral-turned standard with a tripod at the bottom. Witness Hyam testified that the table is of Heppelwhite-Sheraton design of a period about 1790; that the wood is a hard variety of satinwood, or possibly sycamore; that the turning is very finely executed, much more finely than any modern reproduction, and the patina has the hard, close, almost metallic quality which is characteristic of antique satin-

wood of that period; that the table needs repairs but probably at one time it has been strengthened at the joints, but "it is hard to call that a repair." He described the article as a candle stand. On cross-examination he testified that the spiral support for the table was not made from a pole screen, basing his answer on the fact that "the length of the turned part from the junction of the tripod to the foot is longer in proportion to the junction of the piece in a pole screen"; that it would destroy the proportions to construct a table from a pole screen. On redirect examination the witness testified that he saw no evidence to indicate that the table was not produced prior to 1830. Mr. Dawson testified that in his opinion the top was of modern construction and the base was made out of an antique pole screen; that if a candle stand had been built in the period the base was made the supports would have been less spreading. On cross-examination he testified that a pole screen is used to hold a screen which runs up and down on the pole and which is usually plain and not turned; that pole screens are used to protect the face of a reader in front of a fire; that they are from 3 feet 9 inches to 6 feet in height. Mr. Crum testified that the exhibit is about 30 inches high; that it appears to be a "married" piece of furniture, the top and the supporting part being made after 1830; that the top and the base are of different kinds of wood; that the base is about the diameter he had seen on pole screens. He seemed to be of opinion that a pole screen had been cut off on the smooth part about where the table top was attached to the base. Mr. Brengel testified that the top of the table and the circular-shaped piece of wood connecting the base with the top were modern and that the standard, consisting of the vertical spiral column and the tripod, were formerly the lower part of a pole screen and that the table in its imported condition was not produced prior to 1830.

We are of opinion that the weight of evidence does not establish that exhibits 6, 7, 8, 10, 12, 13, and 17 are within the provision for artistic antiquities in paragraph 1811.

The defendant contends that since the importer entered the merchandise as antiques imported for sale he cannot obtain free entry under paragraph 1632 which covers articles not imported for sale. We are not impressed with this argument because it has been repeatedly held that the presumption arising from the entry of goods by the importer may be overcome by evidence. *United States* v. *General Display Case Co.*, 21 C. C. P. A. 542, T. D. 46976.

The plaintiff cites *Hudson Fdwg. & Shipping Co.* v. *United States*, 63 Treas. Dec. 819, T. D. 46389, in support of his claim that the merchandise is free of duty under paragraph 1632 as furniture or household effects used abroad for more than 1 year. The record shows that the twenty-six articles above described were used in the

importer's home in England for more than 1 year and that he imported them for his own use in this country and not for sale. An examination of the decision in *Hudson Fdwg. & Shipping Co.* v. *United States, supra,* shows that the importation consisted of two vases which were entered free of duty under paragraph 1811 of the Tariff Act of 1930. The collector rejected the antiquity claim and assessed duty thereon at 70 per centum ad valorem under paragraph 212 plus 25 per centum ad valorem under section 489: The plaintiff testified that the vases had been in use in her home abroad for more than 1 year and that they were imported for use in her apartment in New York and were not for sale. The court held that the articles were free of duty under paragraph 1632 and directed the collector to refund all the duty assessed thereon. The only apparent difference between the two cases is that, in the case cited, *after* the goods were released from customs custody the importer made an application to the Secretary of the Treasury under the authority of section 520 (4) to classify the merchandise under paragraph 1632 and refund the duty collected, whereas in this case, *before* the goods were released from customs custody, the importer made application to the collector to substitute an entry under paragraph 1632 for the original entry filed under paragraph 1811 for the articles herein involved, thus amending the original entry, and filed with the collector the proper documents required by the Customs Regulations for entry under paragraph 1632. In the case cited the Secretary of the Treasury denied the application on the ground that the merchandise had passed out of the control of the customs officers before the application was filed, and the protest was filed within 60 days after the Secretary of the Treasury denied the application. In the case at bar the collector refused to permit the importer to substitute an amended entry, so that the provisions of paragraph 1632 might be considered in connection with the merchandise herein involved, and the protest was filed within 60 days after the liquidation of the entry. In all other respects the facts in the two cases are identical.

Free entry under paragraph 1632 is not contingent upon a compliance with regulations to be promulgated by the Secretary of the Treasury and therefore the regulations regarding the procedure to be followed in such case are not mandatory and the court can determine from the evidence whether or not the articles are within the paragraph. We find from the record that the twenty-six items above described were used in the importer's home abroad more than 1 year prior to shipment to this country and that, according to the importer's sworn testimony, the articles were imported for his own use and were not intended for sale. All of the twenty-six items come within the provisions of paragraph 1632, therefore, and the record shows that exhibits 9, 11, 14, 15, 16, and 18 also come within the provisions of paragraph 1811.

Since the collector should not have rejected exhibits 9, 11, 14, 15, 16, and 18 in respect to the antiquity claim, the additional duty of 25 per centum ad valorem under section 489 was incorrectly assessed thereon, but there remains to consider the question of whether or not the remainder of the twenty-six items are dutiable under section 489. The pertinent parts of that provision read as follows:

Furniture described in paragraph 1811 shall enter the United States at ports which shall be designated by the Secretary of the Treasury for this purpose. If any article described in paragraph 1811 and imported for sale is rejected as unauthentic in respect to the antiquity claimed as a basis for free entry, there shall be imposed, collected, and paid on such article, unless exported under customs supervision, a duty of 25 per centum of the value of such article in addition to any other duty imposed by law upon such article.

The claim that the above-quoted provision is unconstitutional is overruled on the authority of *Goldman* v. *United States*, 28 C. C. P. A. 139, C. A. D. 139.

In the case of *Hudson Fdwg. & Shipping Co.* v. *United States, supra*, the court held that the vases which were held to be free of duty under paragraph 1632 were not subject to the additional duty under section 489 which was assessed by the collector because they were entered under paragraph 1811 and were rejected as unauthentic in respect to the antiquity claimed as a basis for free entry. In the case of *Howard Young Galleries, Inc.* v. *United States*, 24 C. C. P. A. 101, T. D. 48413, the court considered a similar situation. In that case an original painting was entered as an artistic antiquity under paragraph 1811 and it was assessed with duty at 20 per centum ad valorem under paragraph 1547 of the Tariff Act of 1930 plus an additional duty of 25 per centum ad valorem under section 489. The importer contended before the appellate court "that the language of the act 'a duty of 25 per centum of the value of such article in addition to any other duty imposed by law upon such article,' implies that additional duties can be levied only where there are other duties to which the penalty duty is an addition." The court reviewed the legislative history of the provision, and, in sustaining the importer's claim, said:

Therefore, it seems to us that it was the intent of Congress to impose an additional duty, even where there was no fraud, upon goods which would be dutiable if not produced prior to 1830, and that it did not intend by the enactment of section 489 to place a duty upon an original oil painting which Congress has always given a preferred tariff duty status, for purposes which are obvious.

This excerpt applies with equal force to the merchandise described in paragraph 1632, and, inasmuch as the record shows that the twenty-six articles above referred to were imported for the importer's own use, they are not articles imported for sale which section 489 subjects to the additional duty of 25 per centum ad valorem. We hold that the twenty-six items above enumerated are all free of duty under paragraph 1632 and that exhibits 9, 11, 14, 15, 16, and 18 have

the additional characteristics which entitle them to free entry under paragraph 1811. We hold further that said twenty-six articles are not subject to the additional duty of 25 per centum ad valorem under section 489, and, as to said articles, the protest is sustained.

As to all other merchandise, the protest is overruled. Judgment will be entered accordingly.